# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                   No. CR 10-1924 JB

HOMAR LEDEZMA-LEDEZMA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed May 2, 2011 (Doc. 36).  The Court held a hearing on July 8, 2011.  The primary issue is whether the Court should downwardly vary and/or depart from the sentencing guideline application in the Presentence Investigation Report ("PSR").  The Court will not downwardly depart under U.S.S.G. § 5H1.6, because the circumstances of this case do not fall outside the heartland of cases, but it will downwardly vary and impose a sentence of 27 months.

## PROCEDURAL BACKGROUND

On June 24, 2010, a federal grand jury returned an Indictment, charging Defendant Homar Ledezma-Ledezma with a violation of 8 U.S.C. § 1326(a) and (b) -- Re-entry of a Removed Alien.  See Doc. 9.  On March 11, 2011, Ledezma-Ledezma entered into a Non-Standard Fast Track Plea Agreement, in which he pled guilty to a violation of 8 U.S.C. § 1326(a) and (b).  See Doc. 33.

On April 8, 2011, the United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR").  The PSR calculated Ledezma-Ledezma's adjusted offense level as 24, and his total offense level as 21 after a 3-level reduction for acceptance of responsibility.  The

PSR calculated Ledezma-Ledezma's criminal history category as II.  An offense level of 20 and criminal history category of II establishes a guideline sentencing range of 37 to 46 months.  On May 10, 2011, the USPO re-disclosed the PSR, after having made several factual changes to the PSR.

On May 2, 2011, Ledezma-Ledezma filed the Defendant's Sentencing Memorandum. See Doc. 36.  In his sentencing memorandum, Ledezma-Ledezma argues that he returned to the United States, because his two children -- ages 11 and 9 -- were physically and sexually abused.  He states that he reported the abuse when he initially became aware of it, but that his attempts to find relief for his children while he was in Mexico were fruitless.  He states:

> The Court in determining the particular sentence to impose shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. The nature and circumstances of this case and the history and characteristics of this defendant do not warrant the severe sentence contemplated in Guideline calculations. A downward departure is warranted based on Ledezma's [sic] circumstances and circumstances of this case especially when considering his reasons for returning [sic] the United States.

Sentencing Memorandum at 4.  He argues that, had it not been for his children's situation, he would not have returned to the United States.  Ledezma-Ledezma argues that the re-entry guideline as applied in this case is more harsh than 18 U.S.C. § 3553(a) requires.  Ledezma-Ledezma also argues that the re-entry guideline provision, U.S.S.G. § 2L1.2, is not the product of empirical evidence. Ledezma-Ledezma asks the Court to consider his "variance and departure argument" and asks that Court to "vary and/or depart downward from the calculated sentencing guideline application in the PSR."  Sentencing Memorandum at 12.

On May 4, 2011, Plaintiff United States of America filed the United States' Response to Defendant's Sentencing Memorandum Filed on May 2, 2011 (Doc. 36).  See Doc. 37.  The United States argues that Ledezma-Ledezma's situation is not extraordinary to an extent that would warrant a downward departure for family ties and responsibilities.  It also argues that a downward departure

for cultural assimilation is not warranted.  The United States asks the Court to impose a sentence within the guideline imprisonment range of 37 to 46 months.  The United States further argues that U.S.S.G. § 2L1.2 is one of the sentencing commission's most extensively considered, evaluated, tailored, and amended guidelines, and that it has been amended numerous times.

At the hearing, Ledezma-Ledezma represented that he was not arguing for a downward departure based on cultural assimilation, and that he was arguing only that the Court should consider the nature and circumstances of the offense under 18 U.S.C. § 3553(a).  He represented that he was not referencing any section of 5K in the sentencing guidelines.

## ANALYSIS

The Court will deny Ledezma-Ledezma a downward departure under U.S.S.G. § 5H1.6. Although Ledezma-Ledezma asks for a downward departure in his Sentencing Memorandum, it is not clear which guideline provision upon which he relies.  At the hearing, Ledezma-Ledezma represented that he was arguing only that the Court should consider the nature and circumstances of the offense under 18 U.S.C. § 3553(a), and that he was not arguing for a downward departure based on cultural assimilation.  He also represented that he was not referencing any section of 5K in the sentencing guidelines.  The Court will consider Ledezma-Ledezma's arguments regarding the nature and circumstances of the offense in its variance analysis, but the Court does not believe that Ledezma-Ledezma's circumstances warrant a downward departure.  Section 5H1.6 of the guidelines states: "In sentencing a defendant convicted of an offense . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.  The Court is unconvinced that Ledezma-Ledezma's circumstances take him outside of the heartland of cases that this Court, this District, the border districts, and the federal courts in general see on a regular basis.  Ledezma-Ledezma returned to the United States to protect his children, who live in

-3-

the United States.  Unfortunately, the Court sees many people in this Court and in this district whose circumstances are similar to those of Ledezma-Ledezma.  Ledezma-Ledezma's circumstances do not take him outside the heartland of cases.  The Court therefore denies Ledezma-Ledezma's request for a downward departure.

The Court has reviewed the PSR's factual findings with care.  There not being any objections to those, the Court will adopt those as its own.  The Court has also considered the sentencing guideline applications in the PSR.  There not being any objections to those, the Court will adopt those as its own.  The Court has also considered the factors set forth in 18 U.S.C. § 3553(a).  Before any downward departure, the offense level is 21 and the criminal history category is II, establishing a guideline imprisonment range of 41 to 51 months.  Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and 5K3.1 of the sentencing guidelines, the Court accepts the plea agreement, which stipulates to an offense level of 20, as the Court is satisfied that the agreed-on offense level departs for justifiable reasons.  The plea agreement is pursuant to a nonstandard fast track plea agreement. In Section 401(m)(2)(B) of the PROTECT Act, Congress approved early disposition or fast-track programs if certain conditions are met. The Court believes that these conditions are met in this case, and this departure is in the lower part of the range of departures that Congress allowed. The Court's sentence will be consistent with the plea agreement.  An offense level of 20 combined with a criminal history category of II establishes a guideline imprisonment range of 37 to 46 months.

The Court notes that Ledezma-Ledezma illegally re-entered the United States after formally being deported.  The Court has considered the guidelines, but in arriving at its sentence the Court has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense

-4-

committed by the applicable category of defendant.  After a careful consideration of Ledezma-Ledezma's facts and circumstances, the Court concludes that the punishment that the guidelines set forth is not appropriate for this sort of offense.  The allegations of physical or sexual abuse of Ledezma-Ledezma's children appear to be particularly strong.  Generally, the Court does not vary when the circumstances of the matter are nothing more than a defendant returning to the United States for his or her children.  In this case, however, there seems to be strong evidence of sexual abuse of Ledezma-Ledezma's biological children.

The Court thus believes that, while the circumstances do not provide a basis for a downward departure under U.S.S.G. § 5H1.6, the circumstances do warrant a downward variance.  Ledezma-Ledezma has a son and a daughter, as well as two adult step-sons.  He states that he returned to the United States because he suspects one of his step-sons is continuing to abuse his biological children.  There appears to be some corroboration in that there are court records that indicate his daughter told him between June and July 2004 that one of his step-sons, Luis Armando Favela, sexually and physically abused her.  Ledezma-Ledezma's son also indicated that Favela was physically abusing him during that time frame.  There is thus some evidence of physical and sexual abuse, and the Court believes that evidence provided very strong motivation for Ledezma-Ledezma to come back into the United States.  Ledezma-Ledezma came back into the United States not only because his children are here, but because the possibility that his children were being subjected to sexual and physical abuse provided extraordinary emotional incentive to come and support his children.  That Ledezma-Ledezma remained out of the United States for four years before coming back despite his children being here also suggests that it was reports of this abuse that motivated him to return.  There also seems to be some corroboration to the reports of sexual and physical abuse, because, after the allegations, the maternal grandmother reportedly cared for the children.  It appears that

Ledezma-Ledezma's motivation for returning to the United States was more than the mere presence of his children in the United States.

The Court has then considered the kinds of sentences and ranges that the guidelines establish. The Court is concerned that Ledezma-Ledezma committed a serious crime -- importation of a controlled substance: marijuana, greater than 50 kilograms (felony) -- in the United States. Ledezma-Ledezma was punished with a fairly severe sentence -- 24 months imprisonment -- and knew that he should not come back to the United States yet still returned. The Court thus believes that imposing a sentence below the sentence he received for the importation crime would be too much of a variance. The Court believes that a variance that is approximately equivalent to a 3-level departure -- to an offense level of approximately 17 -- is appropriate in this case. An offense level of 17 and a criminal history category of II provides a sentencing guideline range of 27 to 33 months. A sentence in this range is consistent with the factors that 18 U.S.C. § 3553(a) sets forth and is also consistent with the need for some variance in this case, because of the need to explore a factor -- the nature and circumstances of the offense -- that is not so prominent in many other cases that the Court sees. The Court has carefully considered Ledezma-Ledezma's arguments about the problems with the guidelines. The Court does not have any fundamental disagreement with the guidelines and that is the reason the Court believes its sentence should try to express the intent of the guidelines. As the Court has previously recognized, the guideline commission may have made some decisions without some of the empirical evidence that the other areas of the guidelines have, but the Court does not have a fundamental disagreement with the guidelines, and "it seems that the approach is not irrational, and expresses the strong political will of Congress and the notion that criminals should not be returning to the United States after being deported." United States v. Almendares-Soto, CR10-1922, Memorandum Opinion and Order at 23, filed December 14, 2010 (Doc. 29). The

Court realizes that the number of prosecutions for illegal re-entry has increased dramatically, but the Court believes that the issue of increased prosecution is something for the political branches to sort out, not for the Court.  The Court thus does not believe that a further variance or departure on this basis is appropriate.  The Court believes that a sentence of 27 months adequately reflects the seriousness of the offense, promotes respect for the law, and provides a more just punishment than a sentence of 37 months.  The Court believes that a sentence of 27 months affords adequate deterrence.  Ledezma-Ledezma was not bringing drugs into the country this time.  In sum, this sentence fully and effectively reflects each of the factors that 18 U.S.C. § 3553(a) embodies.  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir.2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).") (citation omitted), the Court believes that this sentence is a more reasonable sentence than the guideline sentence. And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987.

**IT IS ORDERED** that Defendant Homar Ledezma-Ledezma's request that the Court downwardly vary and/or depart in the Defendant's Sentencing Memorandum, filed May 2, 2011 (Doc. 36), is granted in part and denied in part.  The Court will not downwardly depart under U.S.S.G. § 5H1.6, but it will downwardly vary and impose a sentence of 27 months.

_____
UNITED STATES DISTRICT JUDGE

-7-

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Lynn Wei-Yu Wang
  Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

   *Attorney for the Defendant*